[Cite as *State v. Depinet*, 2013-Ohio-1850.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 13-12-32

    v.

ANDREW J. DEPINET,                O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 11 CR 0288

Judgment Affirmed

Date of Decision:   May 6, 2013

APPEARANCES:

    *Gene P. Murray*  for Appellant

    *Derek W. DeVine and Rhonda L. Best*  for Appellee

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Andrew J. Depinet ("Depinet"), appeals the judgment of the Seneca County Court of Common Pleas, sentencing him to prison after a jury found him guilty of four counts of sexual conduct with a minor under the age of thirteen. On appeal, Depinet contends that the trial court erred by allowing the testimony of two rebuttal witnesses; that the trial court erred by denying his motion for a new trial; and, that he was denied his right to effective assistance of counsel. For the reasons set forth below, the judgment is affirmed.

{¶2} On December 14, 2011, the Seneca County Grand Jury issued a four-count indictment charging Depinet with one count of attempted rape, a felony of the second degree, in violation of R.C. 2923.02(A)(E)(1) and 2907.02(A)(1)(b),(B); two counts of gross sexual imposition, both felonies of the third degree, in violation of R.C. 2907.05(A)(4),(C)(2), and one count of importuning, a felony of the third degree, in violation of R.C. 2907.07(A),(F)(2). The charges involved a child under the age of thirteen, D.K., a twelve-year old boy.

{¶3} Depinet was a twenty-year old college student at the time of his indictment. He worked at Kroger's and also owned and operated a concession stand business, selling snow cones, cotton candy, and other food items at local fairs and events. Depinet and D.K. had been friends for a couple of years and

"hung out" together, driving around and going to movies, bowling, and other activities. Depinet felt he was a "mentor" to D.K., and would sometimes have D.K. assist him in setting up and operating his concession stand.

{¶4} Depinet entered a not guilty plea and a three-day jury trial was held on May 10, 11, and 14, 2012. Witnesses for the State included Deputy Weinreskiel and Detective Reinbolt, two officers who had investigated the charges and who had interviewed D.K. and Depinet concerning the allegations. A tape of Detective Reinbolt's initial interview with Depinet was played in court. (Exhibit 1)

{¶5} The State's main witness was D.K., who testified about his relationship with Depinet and what had occurred during the period of April, May, and June of 2011, when Depinet was 19 and D.K. was 12. During this time period, Depinet began having conversations with D.K. about sexually related topics. (Tr. 142). D.K. testified that Depinet asked to see D.K.'s penis. At first, D.K. told him no, but eventually showed Depinet his penis. Soon after this occurred, Depinet began touching D.K.'s penis and would "stroke" it. (Tr. 145-147) This occurred several times when D.K. was traveling with Depinet in his car. Once, when D.K. was assisting with the concession trailer at the Seneca County Fairgrounds, they were both inside the closed trailer and Depinet asked D.K. to take his pants down so he could see his penis. He then asked to touch and suck on D.K.'s penis, and he attempted to place his mouth on the penis. (Tr. 147-152)

**{¶6}** Eighteen different character witnesses testified on behalf of the defense. The trial court heard testimony from Depinet's co-workers (from Kroger and the concession business), neighbors, relatives, friends, school personnel, and parents of his friends. The character witnesses testified that Depinet was a good student and employee; a conscientious and law-abiding citizen; and a helpful, caring, and respectable person. The testimony established that the witnesses felt he was very trustworthy and no one had ever seen or suspected any inappropriate sexual contact between Depinet and young boys. They also testified that he was truthful and honest.

**{¶7}** Depinet testified on his own behalf and denied all of the charges. He testified that he had "never solicited [D.K.] or any minor for that reason to engage in any sexual activity." (Tr. 428) Depinet did acknowledge that, on the tape from when he was questioned by Detective Reinbolt, he had said that he had briefly touched D.K.'s penis, outside his clothing, one time when they were in Wal-Mart. (Tr. 416) However, Depinet claimed that it was it was D.K. who took Depinet's hand and placed it there, and that he had immediately objected and pulled away. (Tr. 416-420)

**{¶8}** After the defense rested its case, the State called two rebuttal witnesses, James and Tyler. Both boys had known Depinet from school several years earlier when they were in the band. James was 15 years old at the time, and

Tyler was 13. Depinet was 17 or 18 years old at the time of his friendship with James, and he was a junior in high school when he was involved with Tyler, who was then in the seventh grade. They testified that they had been friends with Depinet and would go places with him, like the movies and bowling, and sometimes they would help Depinet with his concession trailer. James and Tyler testified regarding Depinet's behavior with them, including testimony that Depinet had asked to see their penises and had touched their penises, even offering money to do so. (Tr. 458-510)

{¶9} The jury found Depinet guilty on all four counts. The trial court sentenced Depinet to prison for five years on count one, and four years each on counts two, three and four. Counts one and two were to be served concurrently with each other. Counts three and four were also to be served concurrently with each other, but consecutively to the sentences in counts one and two, for a total aggregate prison term of nine years.

{¶10} On May 25, 2012, Depinet filed a motion for a new trial pursuant to Crim.R. 33(A), alleging (1) prejudicial error when the State offered the testimony of two rebuttal witnesses, and (2) juror misconduct when a juror was observed speaking in the hall-way to a friend of one of the witnesses. A hearing was held on the motion for new trial on July 12, 2012. After considering the testimony of

the witness and the affidavits, the trial court found the motion was not well-taken and denied the motion on July 23, 2012.

{¶11} It is from this judgment that Depinet now appeals, raising the following three assignments of error for our review.

### First Assignment of Error

**In an abuse of its discretion, the trial court reversibly erred by allowing the testimonies of two rebuttal witnesses for the State, whose testimonies were false and very damaging to [Depinet] at trial; and therefore the allowance of said testimonies was not harmless error, and was in violation of Rule 404(B) and Rule 608 of The Ohio Rules of Evidence, and also was in violation of [Depinet's] fundamental and substantial rights to a fair jury trial and to due process of law, under the Sixth and Fourteenth Amendments to the Constitution of the United States, and under Article I, Section 5 of the Constitution of the State of Ohio.**

### Second Assignment of Error

**In an abuse of its discretion, the trial court reversibly erred by denying [Depinet's] motion for a new trial, with regard to juror misconduct and with regard to the trial court allowing the false and very damaging testimonies of two rebuttal witnesses for the State, in violation of Rule 33(A)(1), (2), (3) and (5) of the Ohio Rules of Criminal Procedure, and also in violation of [Depinet's] fundamental and substantial rights to a fair jury trial and to due process of law, under the Sixth and Fourteenth Amendments to the Constitution of the United States, and under Article I, Section 5 of the Constitution of the State of Ohio.**

### Third Assignment of Error

**In violation of [Depinet's] fundamental and substantial rights under the Sixth and Fourteenth Amendments to the Constitution of the United States, and under Article I, Section 10 of the**

**Constitution of the State of Ohio, [Depinet] was denied effective assistance of counsel at his jury trial, wherein a collective accumulation of statements, questions, decisions, and arguments, by defense counsel during the jury trial, unrelated to professionally reasonable strategy, including a last, but certainly not least, decisively counterproductive rush-to-judgment exhortation to the trier of facts jury to conclude its deliberations and render its verdicts to a four-count indictment in the remainder of one day, by bedtime; would so collectively and decisively convey to any reasonable trier of facts, as being pejoratively indicative of casting both presumptive and implied guilt, rather than innocence, upon [Depinet], and thereby resulting in ineffective assistance of counsel.**

{¶12} In summary, the issues presented for review by Depinet are:

1. Did the trial court err by allowing the testimony of two rebuttal witnesses?

2. Did the trial court err by denying Depinet's motion for a new trial?

3. Was Depinet denied his right to effective assistance of counsel?

*First Assignment of Error – Testimony of Rebuttal Witnesses*

{¶13} In the first assignment of error, Depinet claims that the trial court erred by allowing two witnesses for the State to testify, on rebuttal, regarding Depinet's sexual acts involving them. Depinet believes that the testimony of the two rebuttal witnesses should not have been permitted, pursuant to Evid. R. 404(B) and Evid.R. 608(B). He further contends that the testimony of these two witnesses was false, and denied him his fundamental rights to a fair trial.

**{¶14}** "It is well settled that '[t]he trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court.'" *State v. Barnes*, 94 Ohio St.3d 21, 23, 2002-Ohio-68, quoting *State v. Issa*, 93 Ohio St.3d 49, 2001-Ohio-1290. "[A] trial court's ruling on the admissibility of evidence will not be disturbed on appeal absent an abuse of discretion." *State v. McCullough,* 3d Dist. No. 12-07-09, 2008-Ohio-3055, ¶ 24. Thus, the question is whether the trial court acted unreasonably, arbitrarily, or unconscionably when the trial court overruled Depinet's objections and permitted the two rebuttal witnesses to testify at trial. *See Barnes* at 23.

**{¶15}** Depinet cites to Evid.R. 404(B) and Evid.R. 608(B) in support of his contention that this testimony should not have been permitted by the trial court. Evid. R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, it may be admissible for other purposes. *Id.* Evid.R. 608(B) states that, "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence."

**{¶16}** However, the State's rebuttal evidence was not offered as proof of other bad acts, under Evid.R. 404(B), or to attack Depinet's credibility, pursuant to Evid.R. 608. These witnesses were presented to rebut evidence of a pertinent character trait that Depinet had offered to support his defense. Depinet claimed that he had never solicited any minor to participate in sexual activity. Furthermore, several of his character witnesses testified that they had not witnessed Depinet engage in inappropriate sexual behavior with juvenile males. Under Evid.R. 404(A) and Evid.R. 405, Depinet opened the door that allowed the State to rebut his defense.

**{¶17}** Evid.R. 404(A) states that evidence of a person's character may not be admitted for the purpose of proving action in conformity, *except* that it may be offered to *rebut* evidence of a pertinent trait of character that was offered by an accused. Evid.R. 404(A)(1). Here, Depinet offered the testimony of several witnesses who claimed that they had never seen Depinet engaging in inappropriate sexual behavior and did not think that he was the kind of person who would do so, and he himself testified that he had never had inappropriate sexual relations with minors. The State's rebuttal testimony was admissible under these circumstances.

**{¶18}** This Court has previously held that such rebuttal evidence is admissible, in a case very similar to that which is before us today.

> In the case before us, the defendant, in his case-in-chief, interjected the issue of his prior sexual acts into the case. Consequently, as the defendant elected to rely upon the absence of prior acts of sexual misconduct or "perversion" as a defense in his case-in-chief, the state was entitled to introduce testimony in rebuttal to meet the defense interposed by the defendant. "[T]he state is not to be deprived thereof simply because it might tend to further establish the elements of the crime charged." *Holt v. State* (1923), 107 Ohio St. 307, 140 N.E. 349.

*State v. Banks*, 71 Ohio App.3d 214, 219-220 (3d. Dist.1991). *See also*, *State v. Agner*, 135 Ohio App.3d 286, 1999-Ohio-918 (3d Dist.); *State v. Bozeman*, 12th Dist. No. CA2008-10-248, 2009-Ohio-3677. *Cf. State v. Strobel*, 51 Ohio App.3d 31, 36 (3d Dist.1988) (finding that the testimony was inadmissible, *but* stating that "had the defendant himself raised the issue of sexual contact * * * in his case in chief, both cross-examination and rebuttal testimony concerning that contact might well have been permissible."). A defendant waives the statutory limitations regarding specific instances of sexual activity when the defendant "opens the door" to the issue of his past sexual conduct. *Banks* at 220.

{¶19} Depinet also claimed that the testimony of James and Tyler was not true. However, his attorney had the opportunity to cross-exam these rebuttal witnesses, and he did so quite thoroughly. Depinet also took the stand again after their testimony and he had the opportunity to deny their testimony and raise any factual issues that would challenge the witnesses' credibility. It was for the jury to decide the credibility of the witnesses and testimony.

{¶20} The trial court did not abuse its discretion in allowing the testimony of the State's rebuttal witnesses. The first assignment of error is overruled.

*Second Assignment of Error – Denial of Motion for New Trial*

{¶21} In his second assignment of error, Depinet states that the trial court erred when it denied his motion for a new trial. He contends that he should have been granted a new trial because of the damaging effect of the State's rebuttal testimony and because of juror misconduct.

{¶22} The standard of review as to whether a trial court erred when denying a motion for new trial is whether the trial court abused its discretion when entering such judgment. *State v. Schiebe*, 55 Ohio St.3d 71 (1990), paragraph one of the syllabus; *State v. Campbell*, 132 Ohio App.3d 880, 882 (3d Dist.1999). The grounds for a new trial are set forth in Crim. R. 33(A)(1)-(6). The portions of the rule which Depinet claims are applicable in his assignment of error state:

> (A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
> (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
> (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
> (3) Accident or surprise which ordinary prudence could not have guarded against;
> * * *
> (5) Error of law occurring at the trial; * * *

Crim.R. 33(A).  Furthermore, Crim.R. 33(E) states that, "[n]o motion for a new trial shall be granted * * * because of:  * * * (3) The admission or rejection of any evidence against or for the defendant, unless the defendant was or may have been prejudiced thereby; * * * (5) Any other cause, unless it affirmatively appears from the record that the defendant was prejudiced thereby or was prevented from having a fair trial."

{¶23} As discussed in the first assignment of error, we find that there was no error in the admission of the State's rebuttal testimony, so that claim would not be grounds for a new trial.  Depinet also claims juror misconduct, pursuant to Crim.R. 33(A)(2), because one of his character witnesses observed a brief conversation between Juror No. 10 and the girlfriend of one of the State's rebuttal witnesses ("Macy") in the hallway outside of the courtroom, during a recess.  The trial court investigated the matter and held a hearing on the motion.  When the juror was questioned by the investigator, it was discovered that the juror briefly spoke to his great-niece, Macy, in the hallway, but nothing about the trial was discussed and that this contact in no way influenced his decision in the trial. The juror submitted an affidavit, attesting to the following:

> Now comes [Juror No. 10], and being first duly sworn, upon oath, states that:
>
> * * *

> While in the hallway, I saw my great-niece, Macy [].
>
> I said to her, "Hi. What are you doing here?"
>
> She responded, "I'm here to support my friend."
>
> I did not ask who her friend was, and she did not tell me.
>
> We did not discuss the case that was on trial.
>
> After this, I proceeded to the jury room.
>
> Macy [] did not testify as a witness in the case.
>
> My contact with Macy [] had absolutely no impact on my decision to find the defendant guilty as to any count charged.

(Affidavit filed with State's response to Depinet's Motion on June 15, 2012)

{¶24} Depinet did not present any evidence at the hearing, or in his motion, that demonstrated prejudice. His one witness merely stated (in her affidavit attached to the motion for a new trial, and in her testimony at the hearing) that she observed a juror speak briefly, for 1 or 2 minutes, to this young woman, as the young woman was on her way to the restroom. Depinet's witness did not hear any part of the conversation.

{¶25} Depinet has failed to demonstrate how this contact prejudiced him or prevented him from having a fair trial, especially in light of the fact that the juror has indicated that this limited contact with his great-niece in no way influenced his

decision. Based on the foregoing, the trial court did not err in denying Depinet's motion for a new trial. The second assignment of error is overruled.

*Third Assignment of Error – Ineffective Assistance of Counsel*

{¶26} In his final assignment of error, Depinet claims he had ineffective assistance of counsel because of certain statements, or choice of words, made by his counsel during opening and closing statements, and when questioning the witnesses. Depinet also faults his counsel for failing to call certain relatives and friends as witnesses, who claimed that they could have provided testimony contradicting the facts testified to by D.K. and the State's rebuttal witnesses.

{¶27} To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *State v. Group*, 98 Ohio St.3d 248, 2002–Ohio–7247, ¶ 132*; State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus; *Strickland v. Washington*, 466 U.S. 668, 687–688 (1984). "A 'reasonable probability' is a probability sufficient to undermine confidence in the result of the proceeding." *State v. Group*, at ¶ 132. The failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel and may be justified as a tactical decision. *State v. Gumm*, 73 Ohio St.3d 413, 428, 1995–Ohio–24.

There is strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and that strategy and tactical decisions exercised by defense counsel are well within the range of professionally reasonable judgment and need not be analyzed by a reviewing court. *State v. Robinson*, 108 Ohio App.3d 428 (3d Dist.1996).

{¶28} Depinet claims that trial counsel was ineffective based on statements, questions, decisions, and arguments of counsel made during trial.  However, in reviewing the entire record and reading the trial transcripts, we find that Depinet's particular complaints on appeal are taken out of context and do not support a finding of the first prong of the *Strickland* test, deficient performance by counsel.

{¶29} For example, Depinet claims ineffective assistance of counsel based on allegations that trial counsel implied that Depinet actually committed the offenses due to counsel's attempts to attack the essential element of venue, as well because of certain questions he asked when attempting to discredit the testimony of the rebuttal witnesses.  Depinet has taken single words or phrases from the transcript and asserted that those word choices alone amount to ineffective assistance of counsel simply because, when taken out of context, they could have another meaning.  When reading the transcript *in its entirety*, and looking at counsel's choices of words *in context*, the statements do not suggest the negative connotations asserted by Depinet on appeal.

**{¶30}** Depinet also complains of defense counsel's brief statement during closing arguments regarding when the verdict would be returned, indicating that trial counsel hoped for a verdict that same day  Depinet argues that this comment meant that the jury needed to rush and shorten the length of its deliberations. However, in reading the entire closing arguments in context, it seems more likely that the meaning that defense counsel was attempting to convey was that it was so obvious from the evidence that that Depinet was "innocent," that they should be able to quickly and easily arrive at a verdict of "not guilty" that same day. Furthermore, many of Depinet's complained of instances of shortcomings on the part of counsel involved words he used during opening and closing statements, and this part of the trial clearly does not constitute evidence, as the jury was properly admonished by the trial court.

**{¶31}** Defense counsel's trial strategy, as demonstrated throughout by his cross-examination of witnesses, presentation of evidence, and closing argument, was indisputably to attack the victim's credibility and portray Depinet as such a good citizen that it would be impossible for him to commit any kind of inappropriate, let alone illegal, behavior.  Counsel presented *eighteen* character witnesses in support of this strategy, and yet, Depinet suggests that even more witnesses should have been offered.  Claiming ineffective assistance of counsel based on nothing more than failed trial strategy is simply not sufficient.

**{¶32}** Based on the above, we do not find that Depinet has demonstrated ineffective assistance of counsel. The third assignment of error is overruled.

**{¶33}** Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and SHAW, J., concur.**

**/jlr**